# UNITED STATES DISTRICT COURT
# EASTERN DISTRICT OF TEXAS
# MARSHALL DIVISION

|  |  |
|---|---|
| **CICAS IP LLC,** | |
| **Plaintiff,** | **Case No. 2:23-cv-293** |
| **v.** | **JURY TRIAL DEMANDED** |
| **Ethicon, Inc.,** | |
| **Defendants.** | |

## ORIGINAL COMPLAINT FOR PATENT INFRINGEMENT

CICAS IP LLC ("Plaintiff") hereby files this Original Complaint for Patent Infringement against Ethicon, Inc. ("Ethicon" or "Defendant"), and alleges, upon information and belief, as follows:

### THE PARTIES

1.      CICAS IP LLC is a limited liability company organized and existing under the laws of the State of Wyoming with its principal place of business at 30 N Gould St, Suite R, Sheridan, WY 82801.

2.      Upon information and belief, Defendant is a New Jersey corporation with a place of business in this District located Plano and Tyler, Texas. Upon information and belief, Defendant employs individuals in this Judicial District involved in the sales and marketing of its products. Defendant may be served with process via its registered agent, C T Corporation System, located at 1999 Bryan Street, Suite 900, Dallas, Texas 75201. Upon information and belief, Defendant does business in Texas, directly or through intermediaries, and offers its products and/or services, including those accused herein of infringement, to customers and potential customers located in Texas, including in the judicial Eastern District of Texas.

## JURISDICTION AND VENUE

3.        This Court has subject matter jurisdiction over this case under 28 U.S.C. §§ 1331 and 1338(a).

4.        This Court has personal jurisdiction over Defendant.  Defendant has continuous and systematic business contacts with the State of Texas.  Defendant transacts business within this District and elsewhere in the State of Texas. Further, this Court has personal jurisdiction over Defendant based on its commission of one or more acts of infringement of patent-in-suit in this District and elsewhere in the State of Texas.

5.        Upon information and belief, Defendant transacts substantial business in the State of Texas and this Judicial District.  Defendant has committed acts of infringement in this District by, among other things, offering to sell and selling products that infringe the asserted patents, including the accused products as alleged herein, as well as providing service and support to its customers in this District.  Upon information and belief, Defendant, directly or indirectly, participates in the stream of commerce that results in products, including the accused products, being made, used, offered for sale, and/or sold in the State of Texas and/or imported into the United States to the State of Texas.

6.        Defendant maintains regular, physical, continuous, and established places of businesses, including places of business for an Executive Territory Leader, along with medical device sales associates/representatives, in this District, which Defendant has established, ratified, and controlled; have employed people to conduct their business from this District; and from which they have willfully infringed the Asserted Patents in order to benefit themselves in this District. Defendant commits acts of infringement in this District, including as explained further below by making and using the infringing systems in, and performing at least one step of the accused

methods of the Asserted Patents, at their regular and established places of business in this District.

7.      As shown below, Defendant has employees in the Eastern District of Texas, including ab Executive Territory Leader for over 20 years:



*See* https://www.linkedin.com/in/chuck-schreiber-090a4841/ (screenshot of Chuck Schreiber's LinkedIn page, as Executive Territory Leader, located in Plano, Texas, of Defendant).



*See* https://www.linkedin.com/in/blake-luce-a4006a1/ (screenshot of Blake Luce's LinkedIn page, as Medical Device Sales, located in Tyler, Texas of Defendant).

8.      As shown above, all three of these employees are located in this District in Plano and Tyler, Texas.  Their locations within the Eastern District of Texas are important to the business

performed and defendant had intention to maintain some place of business in the Eastern District of Texas in the event any employees decided to terminate their residences as a place there.

9.      Defendant's employees also not merely possess inventory. Their use in the Eastern District of Texas part of Defendant's services to its Eastern District of Texas customers, a job that falls on these employees. When sample products or inventory arrive at these employees' places of businesses, they then visit local customers to deliver or show the samples.

10.     Defendant has further solicited salespeople in public advertisements to cover the challenged venue area and preferred that those employees live in their assigned sales area. Their locations within the Eastern District of Texas are important to the business performed and defendant had intention to maintain some place of business in the Eastern District of Texas in the event any employees decided to terminate their residences as a place there.

11.     Defendant has regular, physical presences of Defendant employees in this District conducting Defendant's business. Defendant maintains a regular and established place of business at the Defendant defined places and separate areas by the regular, physical presence of its employees.

12.     Venue is proper in this District as to Defendant pursuant to at least 28 U.S.C. §§ 1391(c)(2) and 1400(b).  As noted above, Defendant maintains a regular and established business presence in this District. *See In re Monolithic Power Sys., Inc.,* 50 F.4th 157, 160 (Fed. Cir. 2022); *see also AGIS Software Dev. LLC v. Google LLC*, No. 2:19-CV-00361-JRG, 2022 WL 1511757, at *9 (E.D. Tex. May 12, 2022)

### BACKGROUND AND PATENTS-IN-SUIT

13.     Plaintiff is the sole and exclusive owner, by assignment, of U.S. Patent Nos. 6,850,794 ("the '794 Patent") titled "Endoscopic Targeting Method and System" relating to image-guided surgery, and in particular, to an endoscopic targeting method and system.

14.     By operation of law, the '794 Patent was originally issued and exclusively vested to the named inventor, Ramin Shahidi, as of the issue date of the '794 Patent.   *See* 35 U.S.C. § 261; *Schwendimann v. Arkwright Advanced Coating, Inc.,* 959 F.3d 1065, 1072 (Fed. Cir. 2020); *Suppes v. Katti,* 710 Fed. Appx. 883, 887 (Fed. Cir. 2017); *Taylor v. Taylor Made Plastics, Inc.,* 565 Fed. Appx. 888, 889 (Fed. Cir. 2014).   The inventors, in a written instrument dated November 6, 2001, and filed with the United States Patent and Trademark Office on January 23, 2002, assigned all rights, title, and interest in the '794 Patent to Stanford University.

15.     Stanford University, in a written instrument dated October 31, 2007, and filed with the United States Patent and Trademark Office, assigned all rights, title, and interest in the '794 Patent back to Ramin Shahidi.

16.     Ramin Shahidi, in a written instrument dated April 8, 2010, and filed with the United States Patent and Trademark Office on April 13, 2010, then assigned all rights, title, and interest in the '794 Patent to California Institute of Computer Assisted Surgery, Inc.

17.     Thereafter, California Institute of Computer Assisted Surgery, Inc. assigned all rights, title, and interest in the '794 Patent to the Plaintiff. As such, Plaintiff has sole and exclusive standing to assert the '794 Patent and to bring these causes of action.

18.     The '794 Patent is valid, enforceable, and was duly issued in full compliance with Title 35 of the United States Code.

19.     The inventions described and claimed in the '794 Patent were invented individually and independently by Ramin Shahidi.

20.     The '794 Patent includes numerous claims defining distinct inventions. As represented in Fig. Fig. 1 of the '794 Patent below, the inventions generally relate to image-guided surgery, and in particular, to an endoscopic targeting method and system.



**Fig. 1**

21. The priority date of each of the '794 Patent is at least as early as September 23, 2000.  As of the priority date, the inventions as claimed were novel, non-obvious, unconventional, and non-routine.

22. Before the inventions of the '794 Patent, endoscopic surgical tools were used in a variety of surgical procedures. Typically, such tools included an optical system for visualizing patient structure at or near a target site, and a surgical tool for carrying out desired operations at the site, e.g., removal of tissue for biopsy, surgical removal of necrotic or tumorous tissue, surgical repair of tissue structure, etc. *See* '794 Patent, Col. 1, ll. 1-21.

23. Therefore, in an endoscope-guided operation, the surgeon would be required to know in which direction, and what distance to advance the tool in order to optimally access the target site. Since an endoscopic tool can only view surface structure, the surgeon would often have difficulty in locating and/or accessing a target site, which is likely to be hidden from endoscopic view. *Id.*, Col. 1, ll. 23-9.

24. The inventor of the '794 Patent conceived new an endoscopic targeting method and system to assist a surgeon in performing an endoscopic surgical procedure or endoscopic examination of a patient. *Id.*, Col. 1, ll. 30-3.

25. To do so, the '794 Patent includes, in one aspect, a system for enhancing the ability of a surgeon to access a target site within a patient. The system includes a data file containing volumetric scan data of a region of the patient that includes the target site, a display device, a movable imagining tool for producing on the display device, an image of visible patient structure seen by the tool, where the position of the tool is tracked relative to the position of the patient, and a computer operatively connected to data file, display screen, and tracking device. *Id.*, Col. 1, ll. 36-45.

26. Then, the computer operates to (i) determine the position and/or orientation of the tool in the frame of reference of the patient, (ii) identify the scan-data coordinates (either x,y or x,y,z coordinates) of the target site, and (iii) project on the video image on the display device, indicia that indicate the lateral position of the target site with respect to the patient structure imaged on the display device. *Id.*, Col. 1, ll. 46-52.

27. The '794 Patent is a pioneering patent and has been cited as relevant prior art in 134 subsequent United States Patent Applications, including Applications Assigned to Defendant and such technology leaders and academia as Ethicon Surgical Operations, Inc., Veran Medical Technologies, Inc., Stryker Corporation, Boston Scientific Scimed, Inc. and Covidien.

28. The claims of the '794 Patent were all properly issued and are valid and enforceable for the respective terms of their statutory life through expiration, and are enforceable for purposes of seeking damages for past infringement even post-expiration. *See, e.g., Genetics Institute, LLC v. Novartis Vaccines and Diagnostics, Inc.,* 655 F.3d 1291, 1299 (Fed. Cir. 2011) ("[A]n expired patent is not viewed as having 'never existed.' Much to the contrary, a patent does have value

beyond its expiration date.  For example, an expired patent may form the basis of an action for past damages subject to the six-year limitation under 35 U.S.C. § 286") (internal citations omitted).

## DEFENDANT'S INFRINGING PRODUCTS

29.     Upon information and belief, Defendant makes, sells, advertises, offers for sale, uses, or otherwise provides endoscopic targeting methods and systems, including, but not limited to, the Monarch Platform ("Accused Instrumentalities"), that utilize the '794 Patent's patented endoscopic targeting methods and systems. On information and belief, these endoscopic targeting systems and methods include (a) a data file containing volumetric scan data, (b) a display, (c) a movable imaging tool, (d) a computer connected to the data file and display, and (e) indicia that indicate the direction and position of target site, as invented in the '794 Patent.

30.     As shown in more detail below, Defendant's products include each and every limitation of at least, but not limited to, claim 1 of the '794 Patent and therefore literally infringe these claims. Plaintiff reserves the right to assert additional claims and to assert infringement under the doctrine of equivalents in light of information learned during discovery or in view of this Court's claim construction order.

31.     Images of Defendant's endoscopic targeting products are shown below. Defendant's endoscopic targeting systems products include the require

- o   a data file containing volumetric scan data;

- o   a display;

- o   a movable imaging tool for producing on the display device, an image of visible structure seen by the tool, where the position and/or orientation of the tool is tracked with respect to the patient coordinate system;

- a computer connected to the data file and display, for (i) determining the position and/or orientation of the tool in a patient coordinate system, (ii) identifying the scan-data coordinates of the target site in the patient coordinate system, and (iii) projecting on the video image on the display device; and

- indicia that indicate (a) the direction of the target site, if the target site is outside the patient structure imaged on the display device, and (b) the lateral position of the target site with respect to the patient structure imaged on the display device and the distance between the tool and the target site, if the target site is within the patient structure imaged on the display device.

32. For example, the Ion Biopsy System is shown below from its website promoting the Accused Instrumentalities and YouTube videos on how it works:



**Bronchoscopy Indications for Use:** The MONARCH™ Platform and its accessories are intended to provide bronchoscopic visualization of and access to patient airways for diagnostic and therapeutic procedures.

**Urology Indications for Use:** The MONARCH™ Platform, Urology, the ureteroscope, and endourology accessories are indicated to provide endoscopic visualization and access of organs, cavities and canals in the urinary tract (urethra, bladder, ureter, calyces and renal papillae) with transurethral access or transurethral access in conjunction with percutaneous access routes. It can also be used in conjunction with endoscopic accessories to perform various diagnostic and therapeutic procedures in the urinary tract.

https://www.jnjmedtech.com/en-US/product-family/monarch



https://www.aurishealth.com/monarch-platform



https://usermanual.wiki/Auris-Surgical-Robotics/MONARCH/pdf

## Local View

This CT-based view combines a virtual representation of the nodule with an oblique slice of the CT volume based on the scope orientation.

For targeting, the CT plane intersects the virtual nodule, allowing you to determine when the target is in plane. The CT forms a virtual "water line," showing the point of intersection. The nodule should still be slightly visible when underneath the plane of the CT. The pathway is represented in this view as a 3D line that travels in and out of the CT plane-based path and airway direction.

A 3D representation of the scope tip appears in plane at the start of the pathway.



https://usermanual.wiki/Auris-Surgical-Robotics/MONARCH/pdf

ORIGINAL COMPLAINT FOR PATENT INFRINGEMENT                                                    10

The following images shows the tower:



| Item | Description |
|------|-------------|
| ① | Caster lock |
| ② | USB port |
| ③ | Monarch Navigation Field Generator port |
| ④ | Pinch valve |
| ⑤ | Peristaltic pump |
| ⑥ | Monarch Touchscreen |
| ⑦ | Bronchoscope umbilical port |
| ⑧ | Monarch Navigation Patient Sensors port |
| ⑨ | Drawer |
| ⑩ | Power button |
| ⑪ | Optical disc drive (DVD) |

https://usermanual.wiki/Auris-Surgical-Robotics/MONARCH/pdf



## ENDOSCOPE

# Flexible Technology Re-Imagined

Portfolio of novel robotic-assisted flexible endoscopes

Innovative bronchoscope with a telescoping design and integrated camera for continuous vision and precise access

Advanced ureteroscope offers 4-way articulation and 3D tip tracking technology to support guided percutaneous access

https://www.aurishealth.com/monarch-platform



## INTEGRATED INTERFACE

# For An Elevated User Experience

The controller is designed to help navigate instinctively the flexible robotic endoscopes and instruments into the kidney or the periphery of the lung utilizing precise movements and control

Familiar touchscreen panel integrates all views into a single interface

Ergonomic design gives the physician more comfort, stability, and control over their procedure

https://www.aurishealth.com/monarch-platform

At the core of the Monarch Navigation Application is the Live Bronchoscope view which provides vision in both the central airways and periphery. This camera view is available from any part of the user interface.



https://usermanual.wiki/Auris-Surgical-Robotics/MONARCH/pdf

## Navigation Views

The Monarch Navigation Application integrates a pre-procedure-computed tomography scan into a peri-procedure interface displaying endoscope tip location relative to the pre-procedure scan anatomy. The navigational information displays the Monarch Bronchoscope tip location relative to the CT scan. The application's interface includes a virtual representation of the lung with scope tip location. The following views describe the way that the scope tip location appears on the CT scan images or virtual representations.

- Live Bronchoscope (page 66).
- Virtual Bronchoscope (page 69).
- 3D Map View (page 70).
- Local View (page 71).
- Targeting Views (page 72).
- Axial, Sagittal, and Coronal CTs (page 74).

The Virtual Bronchoscope view shows the scope position and orientation from inside the airways, generally mirroring the view of the live camera. The Virtual Bronchoscope view is designed to help visualize the next turn. It is a real-time virtual representation of the pathway that updates relatively with camera pitch, yaw, roll, and position along the planned path.

The Virtual Bronchoscope shows the pathway as a 3D line in the center of the path that reflects the color of the available paths. Whenever the scope is traveling on two or more paths, the two paths appear overlaid.



https://usermanual.wiki/Auris-Surgical-Robotics/MONARCH/pdf

## Pre-Procedural Planning

Prior to the procedure, the Monarch Pre-Op Planning Application running on the Monarch Pre-Op Planning System or Monarch Tower Touchscreen enables a physician to review a pre-procedural CT scan and plan a pathway through the airways for a physician-controlled bronchoscope to navigate towards the target of interest. During the procedure, the software integrates a pre-procedural CT scan into a user interface.

The Monarch Pre-Op Planning Application provides the following features:

- CT viewing capabilities similar to standard CT DICOM viewer software.
- Airway segmentation: segmentation of the trachea and main airways to aid visualization of the airways and path planning.
- Target identification: ability to select one or more targets of interest.
- Path planning: computer generated path to the target based on segmented airways.
- Manual path planning: ability for user to identify airways and modify the path on the CT scan to finalize a pathway to the target as necessary.

Monarch Pre-Op Planning Application is accessible from both the Monarch Tower Touchscreen and the Monarch Pre-Op Planning System.

https://usermanual.wiki/Auris-Surgical-Robotics/MONARCH/pdf

## Identify a Target

**WARNING:** Increased size of nodule selection may lead to path creation to critical anatomy. Confirm that the selected nodule is the intended target.

**WARNING:** Path creation provides supplemental information to navigate to nodule. Failure to exercise clinical judgment to determine appropriate navigation and biopsy plan may result in biopsy of unintended location.

1. Place crosshairs over a region of interest in any of the CT views and click or tap + next to Targets to create a new target. A new target and new path appear automatically.

   a. The target shape is based on the anatomy of region selected. Click or tap the Sphere icon  to change the target shape to a sphere. Right-click and drag to adjust the sphere target size. Click or tap the Sphere icon again to return to original target shape.

2. Click or tap the Manual Path icon  if the target is beyond the default path created during segmentation view or to create a manual path.

https://usermanual.wiki/Auris-Surgical-Robotics/MONARCH/pdf



https://usermanual.wiki/Auris-Surgical-Robotics/MONARCH/pdf

The Virtual Bronchoscope view shows the scope position and orientation from inside the airways, generally mirroring the view of the live camera. The Virtual Bronchoscope view is designed to help visualize the next turn. It is a real-time virtual representation of the pathway that updates relatively with camera pitch, yaw, roll, and position along the planned path.

The Virtual Bronchoscope shows the pathway as a 3D line in the center of the path that reflects the color of the available paths. Whenever the scope is traveling on two or more paths, the two paths appear overlaid.



https://usermanual.wiki/Auris-Surgical-Robotics/MONARCH/pdf

ORIGINAL COMPLAINT FOR PATENT INFRINGEMENT                    16

**From Spec:** The system also determines indicia which will be placed on the video image to indicate to the user the following types of information (i) **the x,y (lateral)** position of the target site, (ii) the z distance from the instrument to the target site, and optionally, (iii) the uncertainty in target-site position.

The CT views include Axial, Sagittal and Coronal planes which reflect the scope's current position within the airway tree while also showing the location of the target nodule. In addition to the traditional planar views, the user interface includes several views with oblique slices based on the orientation of the scope. These views include Local View.



| Item | Description |
|---|---|
| ① | Direction of articulation |
| ② | Magnitude of Bronchoscope articulation |

https://usermanual.wiki/Auris-Surgical-Robotics/MONARCH/pdf



https://usermanual.wiki/Auris-Surgical-Robotics/MONARCH/pdf

https://usermanual.wiki/Auris-Surgical-Robotics/MONARCH/pdf

## COUNT I
## Infringement of U.S. Patent No. 6,850,794

33.   Plaintiff incorporates the above paragraphs by reference.

34.   Defendant without authority, continues to make, use, sell, offer to sell, and/or import into the
United States its Accused Instrumentalities as shown above.

35.   Defendant thus has infringed and continues to infringe at least claim 1 of the '794 Patent literally
and/or under the doctrine of equivalents.

36.     Defendant has also actively induced and will continue to actively induce the infringement of at least one of claim 1 of the '794 Patent, in violation of 35 U.S.C. § 271(b), by, among other things, actively and knowingly aiding and abetting infringement of others through activities such as creating and/or distributing videos of use such as the videos above, brochures, manuals, instructional documents, and/or similar materials with instructions on creating, manufacturing, designing, assembling and/or implementing infringing products, with the specific intent to induce others to directly make, use, offer for sale, sell, and/or import into the United States products that fall within the scope of the '794 Patent, without license or authority from Plaintiff. On information and belief, Defendant knows that the induced acts constitute infringement of the '794 Patent.

37.     Defendant individually, collectively, or through others or intermediaries, has contributorily infringed, and/or is contributorily infringing, in violation of 35 U.S.C. § 271(c), at least one claim of the '794 Patent by making, using, offering for sale, selling, and/or importing, material parts of the inventions claimed in the '794 Patent, which are not a staple article or commodity of commerce suitable for substantial non-infringing use, and knowing the accused parts to be especially made or especially adapted for use in an infringement of the '794 claims.

38.     Defendant has been on actual notice of the '794 Patent at least as early as September 13, 2019, when he inventor of the '794 Patent entered into an NDA with Auris Health, Inc to discuss the '794 Patent. In February of 2019, Johnson & Johnson today announced that Ethicon, Inc., entered into a definitive agreement to acquire Auris Health, Inc. for approximately $3.4 billion in cash (*see* https://www.jnj.com/johnson-johnson-announces-agreement-to-acquire-auris-health-inc). Defendant's direct and indirect infringement of the '794 Patent has thus been committed

with knowledge of the '794 Patent, making Defendant liable for direct, indirect, and willful infringement.

39.     Defendant's infringement of the '794 Patent will continue to damage Plaintiff, causing irreparable harm for which there is no adequate remedy at law, unless it is enjoined by this Court.

40.     Plaintiff has been damaged because of the infringing conduct by Defendant alleged above. Thus, Defendant is liable to Plaintiff in an amount that adequately compensates it for such infringement, which, by law, cannot be less than a reasonable royalty, together with interest and costs as fixed by this Court under 35 U.S.C. § 284.

41.     Plaintiff and/or its predecessors-in-interest have satisfied all statutory obligations required to collect pre-filing damages for the full period allowed by law.

## PRAYER FOR RELIEF

WHEREFORE, Plaintiff respectfully requests the Court enter judgment against Defendant as follows:

1.     Declaring that Defendant has infringed the '794 Patent;

2.     Awarding Plaintiff its damages suffered because of Defendant's infringement of the '794 Patent;

3.     Awarding Plaintiff its costs, reasonable attorneys' fees, expenses, and interest;

4.     An award to Plaintiff of enhanced damages, up to and including trebling of Plaintiff's damages pursuant to 35 U.S.C. § 284 for Defendant's willful infringement of the '794 Patent;

5.     Granting a permanent injunction pursuant to 35 U.S.C. § 283, enjoining Defendants from further acts of infringement with respect to the '794 Patent;

ORIGINAL COMPLAINT FOR PATENT INFRINGEMENT                                                    20

6.      Awarding Plaintiff ongoing post-trial royalties for infringement of the non-expired '794

Patent; and

7.      Granting Plaintiff such further relief as the Court finds appropriate.

### JURY DEMAND

Plaintiff demands trial by jury, under Fed. R. Civ. P. 38.

Respectfully Submitted

*/s/ Christopher A. Honea*
M. Scott Fuller
     Texas Bar No. 24036607
     sfuller@ghiplaw.com
Randall Garteiser
     Texas Bar No. 24038912
     rgarteiser@ghiplaw.com
Christopher A. Honea
     Texas Bar No. 24059967
     chonea@ghiplaw.com

**GARTEISER HONEA, PLLC**
119 W. Ferguson Street
Tyler, Texas 75702
Telephone: (903) 705-7420

**ATTORNEYS FOR PLAINTIFF**